843 F.2d 1324
 Blue Sky L. Rep. P 72,728
Christ ROUSSEFF, Kenneth Barneby, Vinita Robinson, William
R. Jacobson, Charles Helton, Plaintiffs-Appellees,
v.
E.F. HUTTON COMPANY, INC., a foreign corporation, Defendant-Appellant,
Anadarko Land & Exploration Co., Inc., a foreign
corporation, et al., Defendants.
Christ ROUSSEFF, Kenneth Barneby, et al., Plaintiffs-Appellees,
v.
E.F. HUTTON COMPANY, INC., a foreign corporation, Defendant-Appellant,
Andarko Land & Exploration Co., Inc., a foreign corporation,
et al., Defendants.
 Nos. 87-3290, 87-3560.
 United States Court of Appeals,
Eleventh Circuit.
 May 2, 1988.
 
 William G. Campbell, Jo Lanier Meeks, Joseph A. Ingrisano, G. Wayne Hillis, Kutak, Rock & Campbell, Atlanta, Ga., and C. Timothy Corcoran, III, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant-appellant.
 Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Ft. Wayne, Ind., for plaintiffs-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 In Rousseff v. E.F. Hutton Co., Inc., 843 F.2d 1326 (11th Cir.1987), this court reversed the judgment entered by the district court on the plaintiff's federal securities law and common law fraud claims, but reserved final ruling in the case in order to certify the remaining question on the Florida statutory claim to the Supreme Court of Florida. The question remaining is whether a plaintiff under the antifraud provision of the Florida Securities and Investor Protection Act, Fla.Stat. Sec. 517.301, must prove that the defendant's fraud proximately caused the plaintiff's loss.
 
 
 2
 CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA.STAT. Sec. 25.031 (1986) AND FLA.R.APP.P. 9.150.
 
 
 3
 TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:
 
 
 4
 It appears to the United States Court of Appeals for the Eleventh Circuit that the above-styled case involves a question or proposition of the law of the State of Florida which is determinative of the cause, and which is not answered by any clear, controlling precedent in the decisions of the Supreme Court of the State of Florida.
 
 
 5
 The United States Court of Appeals for the Eleventh Circuit therefore certifies the question or proposition of the law of the State of Florida to the Supreme Court of Florida for instructions, pursuant to Fla.Stat. Sec. 25.031 (1986) and Fla.R.App.P. 9.150.
 
 I. STYLE OF THE CASE
 
 6
 The style of this case is CHRIST ROUSSEFF, Plaintiff-Appellee v. E.F. HUTTON COMPANY, INC., Defendant-Appellant. Hutton appeals from a judgment entered by the United States District Court for the Middle District of Florida.
 
 II. STATEMENT OF THE FACTS
 
 7
 Anadarko Land & Exploration Co. ("ALECO") engages in drilling and operating oil and gas wells. To finance its operations, ALECO typically establishes limited partnerships and sells limited partnership units to investors. In 1982, ALECO formed Anadarko Oil & Gas Partners 1982, Ltd. ("AOGP"), a limited partnership established to explore for natural gas in the Anadarko basin of Oklahoma. A major impetus for the program was the Swift 1-4 well located in Caddo County, Oklahoma. The appellant, E.F. Hutton, acted as the sales agent for the AOGP program.
 
 
 8
 During the summer of 1982 ALECO vice president Norman Singer worked with Hutton vice president Geoff Ramsden to put together the AOGP venture. ALECO's oil and gas experts projected that the Swift 1-4 well contained between 6 and 10 billion cubic feet (BCF) of natural gas. Hutton's expert, however, projected a 60% chance that Swift contained 6 BCF of gas and estimated that it probably contained 3.6 BCF.
 
 
 9
 Christ Rousseff was a regular Hutton client. Rousseff's account executive, Aaron Fleck, approached him to invest two million dollars in the AOGP project. While Rousseff was given ALECO's projections on the Swift well, he was not informed of the less optimistic Hutton projections. In fact, Ramsden testified that it was Hutton's policy not to disclose its own experts' projections to potential investors. Fleck also failed to mention that one of Hutton's experts had expressed reservations about the abilities of one of ALECO's experts. Rousseff also claims that he was not informed that one of the investors in the AOGP project was in bankruptcy, although the disclosure material indicated this.
 
 
 10
 Rousseff had some doubts about the investment, and he became concerned that the investment deal would not close before the end of 1982, which would adversely affect the important tax benefits Rousseff sought from the deal. Ultimately, Rousseff's fears were allayed when Fleck agreed to guarantee the principal of Rousseff's two million dollar investment. Fleck also obtained a two million dollar life insurance policy naming Rousseff as the beneficiary. Given these guarantees, Rousseff invested in the AOGP project. The Swift well became commercially productive, but its reserves were ultimately fixed at less than 4 BCF.
 
 
 11
 Apparently unsatisfied with his investment, Rousseff brought the present suit on September 24, 1985 against Hutton, ALECO and AOGP. He stated claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, the Florida Securities and Investor Protection Act, and the theory of common law fraud. ALECO and AOGP reached a settlement with Rousseff, but the claims against Hutton proceeded to trial. The jury's verdict upon special interrogatories favored Rousseff, and the district court entered judgment permitting Rousseff to rescind his purchase. Hutton filed a notice of appeal with this court, but the district court reserved jurisdiction to award attorneys' fees. The district court subsequently awarded Rousseff attorneys' fees and costs, and Hutton appeals that award as well.
 
 
 12
 At trial, the district court did not submit to the jury the question of whether the plaintiff's loss was proximately caused by the defendant's fraud. The defendant was precluded from showing that the decline in value of the investment was caused by market forces. We have held that the judgment entered in the plaintiff's favor may not stand insofar as it is based upon the federal or common law fraud claims due to the failure to submit the issue of proximate cause to the jury. The Florida securities fraud statute, however, provides rescission as the sole remedy available to an injured purchaser. See Fla.Stat. Sec. 517.211. The plaintiff argues that this change in the law renders it unnecessary for a claimant to prove that his loss was proximately caused by the defendant's fraud. No Florida court has addressed this question and we are unable to identify sufficient guideposts in Florida law to indicate how this question will be resolved under the Florida statute.
 
 III. QUESTION TO BE CERTIFIED
 
 13
 In an action under the Florida Securities and Investor Protection Act, Fla.Stat. Secs. 517.301, 517.211, is the claimant required to prove that his loss was proximately caused by the defendant's fraud?
 
 
 14
 The entire record in this case, and copies of the briefs of the parties in this court are transmitted with this certified question.
 
 
 15
 QUESTION CERTIFIED.